# Case No. 529.
## The ARIES.
[2 Spr. 262; [1] 26 Law Rep. 336.]

District Court, D. Massachusetts. Feb., 1864.

PRIZE—SIGNAL DISTANCE—ACT 1862.

What constitutes signal distance. within the meaning of the act of congress of 1862. c. 204, § 3, (2 Stat. 606,) regulating the distribution of prize money.

In admiralty.

No special counsel appeared for any of the contesting parties, though opportunity was offered to the parties to be so represented. The whole cause was presented, by consent, by R. H. Dana, Jr., U. S. Atty.

SPRAGUE, District Judge. This vessel and her cargo have been condemned. [The Aries, Case No. 528.] The actual captor was the United States steamer Stettin. Certain vessels of the navy claim to share in the proceeds with the Stettin. Their right to participate is the question now for decision. The only one of these vessels which claims to have been within direct signal distance is the Memphis. I will consider her case first. The Stettin was the most northerly of the vessels composing the blockading squadron off Charleston, and was stationed at Bull's bay something like twenty miles to the northward of the flag-ship. A little after midnight, on the morning of the 28th of March, there being a thick fog, she saw the light of a steamer attempting to run in. The Stettin slipped immediately and stood outside of the chase, to cut her off from the inlet, and to prevent her going out to sea, and threw up one or two rockets and fired two guns at the chase; but the fog setting in thick. she lost sight of her. The Stettin remained on the watch until daybreak, when she saw the chase ashore in the bay, boarded her with boats, and took possession. The prize proved to be the steamer Aries. bound from St. Thomas to Wilmington, with a valuable cargo.

[1] [Reported by Hon. Richard H. Dana, Jr., and here reprinted by permission.]

The Stettin fired no guns, and made no signals after daybreak.

The officers of the Aries, having been brought in, have given their evidence. They say that no vessel was within sight, or, so far as they know, within signal distance, from the time they were seen until the capture, and that they heard no guns and saw no lights except from the Stettin. The evidence of the commander and officers of the Stettin was to the same effect. The Memphis was stationed at Rattlesnake shoals. Her distance from the station of the Stettin is variously stated; the nearest being nine miles in an air line, and, by the course of vessels, from twelve to eighteen miles. The United States schooners Blunt and America were both about one mile nearer than the Memphis, at least by the course vessels must take. Neither of them heard guns, or saw lights, or claim to have been within signal distance, or to share in the prize. Mr. Curtis, the executive officer of the Memphis, has given his testimony before the commissioner here. He says that he was below, and neither heard nor saw anything, but was told, the next morning, that lights had been seen in the direction of the Stettin. He adds that he did not consider the Memphis to be within signal distance; that the Stettin could not be seen by day except from the mast-head, and neither flags nor Coston lights could be made out from her under the most favorable circumstances. Interrogatories have been sent to the Memphis, and to her commander, Lieutenant Watmough, but no answers have been received. Lieutenant Watmough replied by letter to the United States Attorney that his recollections were not sufficiently distinct for answering the interrogatories, and adds that he saw the light of a rocket and the flash of a gun from the Stettin, but the fog closed in so thick that he saw no more. It was his duty to answer the interrogatories to the best of his recollection and belief, and his letter is not testimony; but, as his officers and crew are interested, I will consider whether, if full testimony should result in putting the matter where his letter puts it, it would avail the Memphis. If so, I might entertain a motion for further proof. According to his letter, the light of a rocket was seen, and the flash of a gun; but no report was heard, and it does not appear that the direction of the rocket was observed; and probably, in the fog, only the glare of its light was seen. The Memphis made no attempt to reply by gun, rocket, or otherwise, or to get under way. She could only have conjectured, at the time, from what vessel the lights proceeded, and learned the fact the next day, when she heard the circumstances of the capture.

The question, then, is reduced to this: The Memphis was too far distant to make out flags or Coston lights, or to hear, in that state of the wind and weather, the report

of guns of the calibre of those on board the Stettin, but was near enough to see the flash of a gun and the light of a rocket in the air. It is to be observed that the capture was made by daylight, when the evidence shows there was no pretext for saying that any signals could be seen. But I will take the most favorable view for the Memphis, and include the whole time from the sighting of the Aries until the capture. Can the Memphis be considered as "within signal distance" in the meaning of the statute? Evidence has been taken from the principal officers of the vessels off Charleston, and especially of Commodores Turner and Godon, the successive commanding officers of that squadron, on the subject of signals and signal distances. Some of them say that they do not consider guns and rockets to come within the term "signal distance." Others speak of vessels as not within signal distance unless guns and rockets be included. Others again, and perhaps the larger number, and among them the two commodores, include guns and rockets, with positiveness. No system of signalling by guns and rockets has been adopted by the navy department, or is in general use. What use has been made of guns and rockets for that purpose is by special order of the commander of each squadron. In the squadron off Charleston, the utmost extent to which it has been carried seems to be this: Single rockets were to be thrown in the direction the blockade-runner was taking. One witness says that three rockets indicated the approach of a ram. No one says that a single gun has any special signification; but it is said that, if two guns are heard in rapid succession, it is the duty of the vessel hearing them to go immediately and ascertain the cause of the firing. This does not, in my opinion, amount to a system of signals by guns and rockets, of such a character as to satisfy the requirements of the statute regulating the distribution of prize money. Whether such a system might not be established, I do not undertake to determine. The Memphis did not even hear a gun, but merely saw the glare of one gun and rocket as refracted through the fog. The claim, therefore, of the Memphis must be disallowed.

The flag-ship New Ironsides and the Powhattan, Canandaigua, Housatonic, and other vessels of the blockading squadron, have also put in claims to share in the proceeds. They place their claims on two grounds: First, that of co-operation in a common enterprise of blockade, which, they contend, makes them captors of all vessels taken by any ship of the squadron in an attempted breach of the blockade, irrespective of the question of signal distance. This ground of claim was fully considered by this court, and disallowed, in the case of The Cherokee, [Case No. 2,640.] Their other ground of claim is, that, although they were not

themselves within direct signal distance of the Stettin, yet, if the Memphis was within signal distance of the Stettin, she could repeat the signals to the vessels nearest to her, and thus they could pass through the fleet. It is sufficient to say that the first link in the chain fails, as the Memphis herself is decided not to have been within signal distance; and, if she had been, I should very much doubt whether the ability to receive signals by repeating can be held to bring a vessel within the benefits of the statute. The decree must be, that no vessel of the navy is entitled to share with the Stettin in the distribution of the proceeds.

See The St. John, [Case No. 12,225;] The Ella & Anna, [Id. 4,368.]